IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNNE HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:19-cv-00597 |
| v. | ) | |
| | ) | Chief Judge Mark R. Hornak |
| ODLE MANAGEMENT COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Lynne Harper ("Harper") was employed by the Defendant, Odle Management Company ("Odle"), as a Social Development Director in its "Pittsburgh Job Corps Center" ("Center"). Harper was diagnosed with breast cancer in August 2017, after which she received treatment and continued to work for the Center until Odle terminated her employment in June 2018. (ECF No. 19, at 7.) Harper dual-filed a Charge of Discrimination against Odle with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") alleging age and disability discrimination.

Harper now contends that Odle's actions in terminating her employment and in failing to accommodate a disability prior to the termination of her employment violated the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the parallel provisions of the Pennsylvania Human Relations Act ("PHRA"). Harper specifically alleges 1) that Odle terminated her employment because of her breast cancer diagnosis, in violation of the ADA and PHRA; 2) that Odle terminated her employment because of her age, in violation of the

ADEA and PHRA; and 3) that Odle failed to accommodate her breast cancer treatment, in violation of the ADA. (ECF No. 19.).

Now before the Court is Odle's Motion for Summary Judgment. (ECF No. 29.) The Plaintiff responded to that Motion by addressing only her failure to accommodate claim, without mentioning the age or disability discrimination claims. (ECF No. 37.) Odle replied by arguing that the claims that Ms. Harper failed to address are waived and reiterating its arguments for summary judgment on her failure to accommodate claim. The Motion is ripe for disposition. For the reasons that follow, Odle's Motion at ECF No. 29 will be GRANTED in its entirety, and summary judgment will be entered in its favor and against Harper.

## I.      FACTUAL BACKGROUND

The Center is a no-cost education and vocational training program for young adults that is administered by the United States Department of Labor and is currently operated by Odle. (Defendant's Concise Statement of Material Facts ("Def.'s SMF") ¶¶ 12-17.) Harper began her employment at the Center in 2009 as a counseling manager, when a different company operated the facility. (Def.'s SMF ¶ 18.) She was promoted twice during that time, including a 2015 promotion into the role of Social Development Director. (Plaintiff's Counter Concise Statement of Material Facts ("Pl.'s SMF") ¶ 13.)

In 2016, Odle took over the operation of the Center. (ECF No. 19, at 4.) Harper and other Center employees needed to apply for positions with Odle. (Def.'s SMF ¶ 21.) Odle extended an offer to Harper to continue as Social Development Director, which she accepted. (Def.'s SMF ¶ 23.) Harper was fifty-eight (58) years old at the time. (Def.'s SMF ¶ 21.)

In her role as Social Development Director, Harper was one of four Director-level positions at the Center. She reported to the Center's Director, Molly Taleb ("Taleb"). (Def.'s SMF ¶ 24.)

Harper's job duties included management of the Center's dormitories, which are living areas intended to serve both as a "round the clock residence for students" and as a tool to teach students about responsibility, independent living, and other life skills. (Def.'s SMF ¶ 46-49.) Harper's duties included inspecting the dorm areas, recommending facility maintenance, and generally coordinating with other departments to meet goals related to dorm living and student living standards. (Def.'s SMF ¶¶ 55, 56); (Defendant's Selected Excerpts and Exhibits from the Deposition of Lynne Harper ("Harper Dep."), ECF No. 32-1, at 77.)  As Social Development Director, Harper was the person at the Center who was ultimately responsible for ensuring that the dorms met Odle's expected conditions and standards. (Def.'s SMF ¶ 52; ECF No. 32-2, at 12.)

Harper was diagnosed with breast cancer in August 2017, at the age of sixty-one (61). (Def.'s SMF ¶ 99.) At that time, she disclosed to Odle leadership her diagnosis and her need for treatment consisting of surgery, chemotherapy, and radiation. She also notified Odle of her intent to keep working and her belief that she could perform all of the essential functions of her position while in treatment. Harper received regular chemotherapy treatments from June 1, 2017 through May 31, 2018. (Pl.'s SMF ¶ 42.) Harper's Second Amended Complaint ("SAC") generally alleges that although she continued to satisfactorily perform her duties after disclosing her diagnosis, she experienced hostility from Odle and that Odle "created a situation in which Harper was forced to prioritize her work over her recovery." (ECF No. 19, at 7.)[1]

The record shows that Harper's cancer kept her from work for about five days during the 24 months between her cancer diagnosis and the termination of her employment. (Def.'s SMF ¶ 109.) During that time, Harper applied for and was granted Family and Medical Leave Act

---

[1] Harper's SAC briefly references negative performance reviews for issues at the Center, her receipt of a disciplinary warning for an unrelated incident, and Odle's denial of her funding requests. (ECF No. 19, at 7.) Harper's response to the Defendant's Motion for Summary Judgment does not elaborate on or repeat these allegations. (ECF No. 37.)

("FMLA") leave. (Def.'s SMF ¶ 105.)  She also requested and was granted permission to wear a head covering as she experienced the effects of cancer treatment and to park her car closer to the building in a handicapped parking space. (Def.'s SMF ¶ 106.) Harper requested time off of work to attend doctor's appointments, which Odle also promptly granted. (Def.'s SMF ¶ 110.) Although Harper did not take any FMLA leave, she did testify that she knew that she could have used that leave if she had required more time away from work. (Def.'s SMF ¶ 111.)

The record shows that in August 2016, prior to her cancer diagnosis, Harper began to experience job performance issues related to the cleanliness of the dorms which she managed. The parties agree that Odle leadership routinely visited the Center to inspect various departments and provide directives on areas for improvement. (ECF No. 30, at 4-5.) In five of those corporate monitoring visits taking place between August 2016 and March 2018, Odle inspectors noted serious issues with the dorms. An initial August 2016 report observing that the dorms were in a "dirty, disheveled state." (Def.'s SMF ¶¶ 82 –85.) A report from a follow-up September 2016 visit noted that these issues had not been corrected. (Def.'s SMF ¶ 86.)  In April 2017, a visit report again noted that dorm bathrooms were "filthy," describing dirty floors, overflowing garbage, and unflushed toilets, and noting a desperate need for deep cleaning. (ECF No. 30, at 6-7.) Two additional reports written after Odle leadership visits in January and February 2018 also noted the bathrooms' lack of cleanliness as a serious concern. (Def.'s SMF ¶¶ 112-142).

In the March 2018 incident that led to Harper's employment termination, Odle representative Lisa Odle ("Ms. Odle") made an announced visit to inspect the Center accompanied by a state Department of Labor representative. (Def.'s SMF ¶ 129.) Although Ms. Odle had warned Harper of the visit and its importance, the bathrooms still had unflushed toilets and dirty showers. (Def.'s SMF ¶ 131.) The rest of the dorm facilities were similarly described as visibly dirty, with

overflowing garbage and "an unpleasant odor coming from several of the rooms." (ECF No. 30, at 7.) Harper testified that it was clear that Ms. Odle was "very upset" and "not happy" about the dorms following her visit. (Def.'s SMF ¶ 142; Harper Dep., at 20.)

As a result of this visit, Harper and her younger coworker both received written warnings in April 2018 because the dorms did not "meet Odle standards." (Def.'s SMF ¶ 158.) In her deposition, Harper expressed disappointment and embarrassment with the dorms' condition that day, testifying that she knew the visit was a serious failure and believed it ultimately led to her termination. (Def.'s SMF ¶ 157) (quoting Harper's deposition testimony).

Harper received a performance appraisal for the June 2017 through May 2018 time period on April 13, 2018 that noted that although there were "periods of time" when Harper's work met Odle goals, there were "more concerns" as the year went on. (Pl.'s SMF ¶ 41.) Reports from the next visit from the Company's leadership in May 2018 revealed that the problems identified in the prior visit remained unresolved. (ECF No. 30, at 8.) The Defendant terminated Harper's employment on June 6, 2018, in a notice signed by several Odle executives. (Pl.'s SMF ¶ 43.)

## II.    DISCUSSION

### A.    Legal Standard

Under Federal Rule of Civil Procedure 56, a Court must grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 641 (W.D. Pa. 2018); Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered against a party who fails to establish the existence of any element essential to the party's case, and on which that party bears the burden of proof at trial. *Id.* (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party's evidence is to be credited unless facially implausible, with all justifiable inferences drawn

5

in her favor. But to successfully oppose a summary judgment motion, the "mere existence of a scintilla of evidence in support of [her] position [is] insufficient." *Id.* at 642 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S 242, 252 (1986)). Instead, to withstand summary judgment, the non-moving party must produce enough evidence so that a jury could reasonably find in her favor. *Id.*

The moving party bears the initial burden of demonstrating that there are no genuine disputes of material fact. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323). If the moving party satisfies this burden, the opposing party must designate specific facts in the record that show that there is a genuine factual dispute to be resolved at trial. *Celotex*, 477 U.S. at 324. The non-moving party may rely on its own affidavits or on the "depositions, answers to interrogatories, and admissions on file" to designate these facts, but may not rely only on its own pleadings. *Id.*; *see also Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Harper's response to the Defendant's Motion for Summary Judgment defends only her "failure to accommodate" claim from summary judgment, without discussing her age or disability discrimination claims. (ECF No. 37.) The Third Circuit has held that on an issue where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Player v. Motiva Enterprises,* LLC, 240 Fed. App'x 513, n.4 (3d Cir. 2007) (citing to *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir.2004). Once the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988). A nonmoving party that fails to do

so cannot later, on appeal, argue that evidence in the record creates a genuine issue of material fact if that evidence was not highlighted to the district court at the time of summary judgment. *Id.* at 694.

But even when a summary judgment motion is uncontested, a non-responding party does not lose the motion by default. *Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 167 (E.D. Pa. 2020). Instead, where a non-movant does not respond to a motion, a district court must still find that summary judgment is "appropriate" under Fed. R. Civ. P. 56(c) by determining "that the facts specified in or connection with the motion entitle the moving party to judgment as a matter of law." *Hitchens v. Cty. of Montgomery*, 98 F. App'x 106, 110–11 (3d Cir. 2004) (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990).

Harper bears the burden of proof on her age and disability discrimination claims, and by failing to respond to the Defendant's motion for summary judgment, she has failed to identify evidence of record that creates a genuine issue of material fact. And Harper's allegations in her SAC are entitled to no weight on summary judgment: on summary judgment, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)). Along with considering the Motion for Summary Judgment as to the failure to accommodate claim, the Court will apply the Rule 56 standard to determine whether the Defendant has produced sufficient uncontroverted evidence that entitles it to judgment as a matter of law on both Harper's age and disability discrimination claims related to the termination of her employment.

B.    **Disability Discrimination Claims**

First, at Counts One and Three of her SAC, Harper alleges that Odle terminated her employment because of a qualifying disability, her breast cancer, in violation of the ADA, 42 U.S.C. § 12101, *et seq*., and the PHRA, 42 Pa. Stat. Ann. § 951, *et seq*.[2] The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees. 42 U.S.C. § 12112(a). ADA discrimination claims are evaluated under the three-part *McDonnell* Douglas burden-shifting framework. *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793–94 (1973). Under this framework, a plaintiff must first make a *prima facie* case of discrimination. *Id*. To make such a case under the ADA and PHRA, a Plaintiff must establish that (1) she is a disabled person within the statutes' meaning; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by Odle ; and (3) that she has suffered an adverse employment decision as a result of disability discrimination. *Jakomas*, 342 F. Supp. 3d at 642 (citing *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* If the employer successfully meets this light burden, a plaintiff must then show that the employer's stated reasons are pretextual. *Id.* At this final step, a plaintiff may survive a motion for summary judgment only if she can either show that there is sufficient record evidence to discredit the employer's proffered reasons for taking the adverse action, or that she can adduce sufficient direct or circumstantial evidence that "discrimination was more likely than not a motivating or

---

[2] Because the provisions of PHRA and ADA are parallel in all relevant respects, the same analysis applies to disability claims under both statutes. *Pinskey v. Michaels Stores, Inc*., No. 2:15-CV-0184, 2016 WL 7163594, at *4 (W.D. Pa. Dec. 7, 2016).

determinative cause of the adverse employment action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

First, the Court concludes that Harper has established a *prima facie* case of disability discrimination. Although Odle states without elaboration that it "does not concede" that Harper can establish a *prima facie* disability discrimination case, Harper has met all three required prongs. Harper's breast cancer constitutes a disability covered by the ADA, which defines an individual as disabled if they have "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(1). The Third Circuit has concluded that cancer "can–and generally will–be a qualifying disability under the ADA," as long as a plaintiff has testified that her cancer caused a substantial limitation in a major life activity. *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017). Harper testified in her deposition that her chemotherapy treatment for her breast cancer caused her to become severely ill, requiring treatment in a hospital. (Def.'s Harper Dep., at 38.) The Court thus concludes that Harper's breast cancer qualifies a disability covered by the ADA and PHRA. As to the remaining elements of a *prima facie* case, neither party appears to dispute that the Plaintiff was generally qualified by education and experience to perform the essential functions of the job, and the termination of Harper's employment constitutes an "adverse employment action." *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (listing "firing" an employee as an example of an adverse employment action).

The Plaintiff having established a *prima facie* case of ADA discrimination, Odle must articulate a legitimate, nondiscriminatory reason for the adverse employment action under the *McDonnell Douglas* framework. *Jakomas*, 342 F. Supp. 3d at 642. A defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the

discharge, without requiring the defendant to prove that the articulated reason actually motivated the discharge. *Fuentes*, 32 F.3d at 763.

Odle asserts that it fired Harper not because of her age or disability, but only because of her failure to maintain the cleanliness of the dorms. (ECF No. 30, at 6.) The record shows that the issues with the dorms were well documented in reports spanning the period before and after Harper's cancer diagnosis, that Ms. Harper was aware of the severity and urgency of these problems, and that Ms. Harper herself attributes her termination to the state of the dorms during an important corporate monitoring visit. (Def.'s Harper Dep., at 11.) The Court concludes that Odle has met its burden of producing a legitimate reason for Ms. Harper's discharge. *See Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (noting that demonstrably poor performance is a legitimate, nondiscriminatory reason for termination).

The burden next shifts to Harper to show that Odle's "legitimate, nondiscriminatory reason" for her termination is pretextual. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). To meet this obligation at the summary judgment stage, a plaintiff must identify evidence from which a reasonable jury could either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

By failing to respond to the Defendant's motion for summary judgment, Harper has failed to produce evidence from which a reasonable jury could find in her favor under either *Fuentes* prong. First, the Court concludes that there is no evidence in the record from which a factfinder could disbelieve Odle's legitimate reasons for Harper's termination. Instead, the issues with the cleanliness of the dorms were well documented, with concerns consistently communicated to

Harper – who even testified in her deposition that the dorm bathrooms were unclean during an important visit, and that she expected to be terminated after the visit for that reason. (Def.'s SMF ¶ 157) (citing Harper's deposition testimony). As to the second *Fuentes* prong, Harper has failed to point to any independent evidence of disability discrimination at Odle. To the contrary, Harper admitted in deposition testimony that she never experienced hostility from anyone at Odle after her diagnosis, and that Odle representatives were consistently kind to her relative to her cancer diagnosis. (Def.'s SMF ¶ 101; Def.'s Harper Dep., at 104.) She also testified that Odle's Human Resources Manager allowed her time off of work for appointments when requested, encouraged her to apply for FMLA leave to have available in case she needed more time off, did so in a "kind and helpful" way, and promptly granted her FMLA request once she submitted it. (Def.'s SMF ¶¶ 103-14).

By not responding to Odle's Motion for Summary Judgment on this claim, Harper has failed to direct the Court to record evidence showing a genuine dispute of material fact. Harper has therefore failed to show that Odle's stated reason for her termination was pretextual, having failed to point to any evidence in the record from which a reasonable jury could find in her favor. Because Harper has failed to point to record evidence that would allow her to carry her burden on the last step of the *McDonnell-Douglas* burden shifting test, the Court concludes that Odle is entitled to summary judgment on her disability claim related to her employment termination under both the ADA and PHRA.

**C.**   **Age Discrimination Claims**

At Counts Two and Three of her SAC, Harper alleges that Odle discriminated against her because of her age by terminating her employment because she was sixty-two (62) years old, in

violation of the ADEA, 29 U.S.C. § 621, *et seq*., and the PHRA.[3] (ECF No. 19, at 10). Age discrimination claims in which the plaintiff relies on circumstantial evidence also generally proceed according to the burden-shifting framework set forth in *McDonnell Douglas*. 411 U.S. at 792; *see Keller v. Orix Credit All., Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997) (reaffirming the application of a "slightly modified version of [McDonnell Douglas] in ADEA cases").

First, to establish a prima *facie* case of age discrimination under the ADEA, a plaintiff must show that: (1) she is age 40 or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton v. Teleflex Inc*., 707 F.3d 417, 425 (3d Cir. 2013). If the plaintiff can meet this initial burden, the defendant must provide a nondiscriminatory reason for its adverse employment action. *Id.*; *Parish v. UPMC Univ. Health Ctr. Of Pittsburgh*, 373 F. Supp. 3d 608, 629 (W.D. Pa. 2019). Once the defendant produces such a nondiscriminatory reason, the burden then rebounds back to the plaintiff to discredit that legitimate nondiscriminatory reason. To do so, the plaintiff must show that age "had a determinative influence on the outcome" of the defendant's decision-making and that "but for" the plaintiff's age, the defendant would not have taken the adverse employment action in question. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177-78 (2009) (the ADEA requires a plaintiff to "prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employment decision").

Although Odle does not contest Harper's ability to make out a *prima facie* case, the Court is unable to conclude that Harper has met this initial burden. The first three elements are easily

---

[3] Claims of age discrimination under the ADEA and PHRA are analyzed in the same fashion one to the other. *Connors v. Chrysler Fin. Corp.,* 160 F.3d 971, 972 (3d Cir. 1998).

met: Harper was sixty-two (62) when her employment was terminated, falling within the ADEA protected age range; and as discussed above, the termination of her employment constitutes an adverse employment action, and she appears to have been sufficiently qualified by education and experience to serve as Center Director. (ECF No. 40-3.) But no representations have been made as to the age of Harper's replacement, or whether she was replaced at all.[4] And although this final element may be satisfied even without evidence of a younger replacement if a plaintiff sets forth facts which "if otherwise unexplained, are more likely than not based on consideration of impermissible factors," *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638 (3d Cir. 2015), Harper points to no independent evidence of age discrimination by the Center in support of her claim.

But the Court need not conclusively decide this question, because even if Harper could establish a *prima facie* case of age discrimination, she has failed to advance record evidence that would show that Odle's legitimate and nondiscriminatory reasons for terminating her employment were pretextual. At the second step of the analysis, Odle has successfully produced a legitimate, nondiscriminatory reason for the adverse employment action in the form of its assertion that Harper failed to ensure the dorms were cleaned after repeated warnings. (ECF No. 30, at 6.) The burden therefore shifts back to Harper to show by a preponderance of the evidence that Odle's proffered legitimate, nondiscriminatory reason for her termination is pretextual. *See Willis* 808 F.3d at 644. To do so, Harper must identify evidence from which a reasonable jury could either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

---

[4] Harper's reply to the motion for summary judgment does state that Center Director Molly Taleb took over some of Harper's duties after her termination. (ECF No. 37.) But record evidence shows that Ms. Taleb is in her sixties, and it is not clear whether Taleb functioned as Harper's permanent replacement. (Def.'s SMF ¶ 29.)

discriminatory reason was more likely than not a [but for] . . . cause of the employer's action." *See Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

Again, by failing to respond to Odle's arguments in favor of summary judgment, Harper has failed to point to any evidence from which a reasonable jury could disbelieve Odle's articulated reasoning or believe that an invidious discriminatory reason caused Odle's actions in terminating her employment. And not only has Harper failed to point to any facts supporting her claims of age discrimination, the facts in the undisputed record point to a lack of age bias at Odle, at least as to Harper. Odle hired Harper when she was already fifty-eight (58) years old and employs many other employees who are age forty (40) or older, including many who are in their sixties. (Def.'s SMF, ¶ 29.) While not ruling age bias out, these facts do weigh against finding that age was the cause of Harper's termination, and do not undercut the nondiscriminatory reason for dismissal advanced by Odle. *See Cullison v. Dauphin County*, No. 1:10-cv-705, 2012 U.S. Dist. LEXIS 02576, at *29-30 (M.D. Pa. July 24, 2012).

The Court therefore concludes that no reasonable jury could find in Harper's favor on this claim, and that Odle is entitled to judgment in its favor as a matter of law on her age discrimination claims.

### D.   Failure to Accommodate Claim

Harper finally alleges – in the only claim that she defends from the Defendant's summary judgment motion – that Odle failed to accommodate her disability in violation of the ADA. (ECF No. 19, at 10.) Under the ADA, an employer commits unlawful discrimination on the basis of disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the

operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation is defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii)

Although the ADA's statutory text does not itself reference the "interactive process," applicable regulations provide:

> To determine the appropriate reasonable accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3); *see Shapiro v. Twp. Of Lakewood,* 292 F.3d 356, 359 (3d Cir. 2002).

The Third Circuit has clarified that an employer's failure to participate in the interactive process does not constitute an independent ADA claim but is instead part of a failure to accommodate claim. *Whelan v. Teledyne Metalworking Prods.*, 226 Fed.Appx. 141, 147 (3d Cir. 2007). To prevail on a failure to accommodate claim, a plaintiff must prove: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good-faith effort to help the employee seek such accommodations or assistance; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).

Here, neither party disputes that Odle was aware of Harper's disability. The parties also agree both that Odle granted Harper's requests to be allowed to wear a head covering and to park closer to the building, and that Odle encouraged Harper to apply for FMLA leave and swiftly granted her that leave. But Harper contends that these accommodations were insufficient, failing

to satisfy the employer's duty to offer an "appropriate" accommodation to a disabled employee. (ECF No. 37, at 3) (citing *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003). Instead, Harper argues that she requested additional accommodations beyond the parking space and head covering, pointing to her multiple emailed requests for time off to attend doctors' appointments. (Pl.'s SMF ¶¶ 16, 17.) But Harper's own exhibits show that Odle promptly granted each of those requests for time off. (ECF No. 40-7.)

Because Harper has not pointed to a requested accommodation that Odle did not grant, the only remaining question is whether Odle had, and then failed to meet, a duty to affirmatively inquire into Harper's need for additional accommodations beyond those she requested. In *Conneen v. MBNA America Bank*, the Third Circuit observed that there may be some cases in which an employer may have an obligation to in effect ferret out an employee's need for an accommodation even where the employee does not ask for one. 334 F.3d at 330. There, the Court noted that for this duty to be triggered, the employer must either "have enough information to know of 'both the disability and desire for an accommodation,'" or that "circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." 334 F.3d at 332. The *Conneen* court also stated that an employer may in some cases have to "meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Id.*

Yet "neither the law nor common sense can demand clairvoyance of an employer." *Id.* 334 at 331. Instead, the employee "must make clear that the [he/she] wants assistance for his or her disability" to trigger the interactive process. *Conneen*, 334 F.3d at 332 (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)). And "[w]hile the notice [of a request for a

reasonable accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words "reasonable accommodation," the notice nonetheless must make clear that the employee wants assistance for his or her disability." *Taylor*, 184 F.3d at 313. In short, to trigger the duty to engage in the interactive process, "the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.*

In *Conneen*, an employer allowed an employee to work an adjusted schedule to accommodate a disability that made it difficult for her to arrive at work on time. When the employer later removed the accommodation condition under the impression that it was no longer needed, Conneen's chronic tardiness resumed and she was later fired for that reason. *Conneen*, 334 F.3d at 321-24. In affirming the trial court's grant of summary judgment in the employer's favor, the Third Circuit reasoned that Conneen did not inform the employer that her disability remained or that she still required the adjusted schedule, even though she had previously asked for an accommodation and therefore was aware of what she needed to do in order to procure another.  Because the plaintiff in *Conneen* had failed to communicate with her employer about her need for further accommodation, despite demonstrating her prior ability to do so, the defendant could not be liable "for failing to read Conneen's tea leaves." *Id.*

Courts have repeatedly applied this principle to find circumstances insufficient to require an employer to inquire into the possible need for an accommodation when employees fail to affirmatively make an employer aware of their need *and* of their desire for such accommodation. In *Bair v. Citizens Bank of Pennsylvania*, the Court found that even where an employee repeatedly orally complained of back pain caused by a disability that her job duties exacerbated, she had failed to make clear that she desired an accommodation for that disability because she had never requested a physical accommodation from her manager. No. 4:13-CV-2866, 2015 WL 13738832,

at *10 (M.D. Pa. Sept. 21, 2015), *report and recommendation adopted*, No. 4:13-CV-2866, 2015 WL 6701340 (M.D. Pa. Nov. 2, 2015). And like Harper's case, the court in *Watson v. Drexel* found that an employer appropriately engaged in the interactive process to assist an employee where it encouraged her to apply for FMLA leave, approved all leave requests supported by relevant documentation, and only denied leave requests that were not supported by documentation. No. CV 19-1027, 2020 WL 5763587, at *5 (E.D. Pa. Sept. 28, 2020). The *Watson* court rejected the employee's claim that the employer had failed to engage in the interactive process by terminating her employment despite knowing that she had a disability and was "seeking, if not utilizing" FMLA leave, concluding that although the employer knew of the employee's disability, "it had every reason to believe that [the employer's] proffered reasonable accommodation – intermittent FMLA leave – was sufficient to accommodate Watson, and Watson never indicated otherwise." *Id.* at *5.

Here, as in *Conneen,* Harper's deposition testimony confirms that she never requested any accommodations that were not granted to her. (Def.'s SMF ¶ 107). The relevant question is therefore whether the circumstances surrounding Harper's illness were enough to cause a reasonable employer to make inquiries about the possible need for another accommodation beyond those requested and uniformly provided; and if so, whether Odle made such appropriate inquiries and met Harper "half-way." Harper asserts that certain signs of illness that she allegedly exhibited while she continued to work suggest a circumstance that would cause a reasonable employer to inquire into her need for more accommodations beyond those she sought and which were provided. Harper asserts in her response brief that she was visibly ill while she continued to work in the office, exhibiting signs of illness including weight and hair loss. She also notes that she was once

"pushed around the office in a chair" when she was unable to walk due to fatigue from her chemotherapy treatments. (Pl.'s SMF ¶ 33; ECF No. 40-18, ¶ 10.)

But like in *Conneen*, Harper had asked before for accommodations that were each granted, and she was therefore aware of what she could do to procure another accommodation. And like in *Watson*, Odle had every reason to believe that the proffered accommodation of intermittent FMLA leave (along with the other accommodations it had granted before) was enough to accommodate Harper's disability, and Harper never suggested otherwise. In addition, because Odle was aware of Harper's cancer diagnosis from the beginning, the visible signs of Harper's illness were not some sort of signal to Odle that Harper had a disability of which it was unaware, or that implicitly some further accommodation needed to be put on the table by Odle. The Court therefore concludes that the circumstances here were not such that a reasonable employer would have had to inquire further into Harper's need and desire for an accommodation beyond those already provided.

The Court also concludes that even if Odle did have a duty to independently consider some further accommodation for Harper, it met that duty. Odle thoroughly engaged in the interactive process to attempt to provide Harper with necessary accommodations. Besides granting Harper's requests to wear a head covering and park closer to the building, Harper's manager quickly granted each of her emailed requests for time off of work for doctors' appointments. (*See, e.g.*, ECF Nos. 39-7, 39-12). And Odle's Human Resources Manager not only affirmatively encouraged Harper

to apply for and take FMLA leave, but also helped her fill out the paperwork, promptly approved her request once submitted, and encouraged her to take that leave. (Def.'s SMF ¶¶ 17, 26.)[5]

Despite this uncontroverted record evidence of Odle's efforts to accommodate her illness, Harper argues that Odle management generally failed to engage in the interactive process to identify appropriate accommodations for her illness. She argues that the Odle Human Resources Manager "did not ask if Harper would need any additional accommodations" when she granted her requests for time off to attend appointments, and that Odle did not follow-up with her to discuss notations on her FMLA paperwork reflecting that Harper was approved to return to work "as tolerated" and noting possible complications that her chemotherapy might cause in the future. (Pl.'s SMF ¶¶ 25, 26, 28, 29). But Harper's symptoms were not such that Odle should have concluded that she was not "tolerating" work. Odle provided accommodations for the visible physical symptoms of which it was aware by granting Harper permission to wear a head covering and to use a closer parking space. And although Harper alleges that she experienced memory problems caused by her chemotherapy treatment, she never notified Odle of her memory problems and testified that she is not sure whether anyone from Odle was aware of them, and there is no record evidence advanced that Odle management was so aware. (*see* Pl.'s Harper Dep. at 91.)

---

[5] Harper describes the incident in which she was "pushed around the office in a chair," in more detail in her deposition testimony as follows. In a single incident sometime around when Harper first returned to work from her initial chemotherapy treatment in 2017, she found herself so fatigued and weak that she could "hardly make it from the parking lot." (Plaintiff's Excerpts from L. Harper Deposition, (Pl.'s Harper Dep.) (ECF No. 40-25) at 250-251.) Despite the weakness she was experiencing, she reported reasoning that if she could make it to her desk, she could use her computer to "do a lot of productive things just sitting still." *Id.* She therefore had one of the security personnel push her in a rolling chair from the front hall to her office and testified that her supervisor saw this happen. (Pl.'s Harper Dep., at 250.) Harper didn't "make it through the whole day," instead staying until after lunch and collecting some work papers to take home with her. (Pl.'s Harper Dep., at 251.) These facts show that Odle neither required nor encouraged Harper to work through her weakness; that Harper asked for and received physical assistance to make it to her desk when she had hoped that she could accomplish work sitting down; and that when she found she was unable to continue to work on that one day, she apparently gathered work papers to take home and left halfway through the day without remonstrance or issue from Odle. And there is no record evidence that this ever happened again, or that Harper had ever indicated in any way that it might. Thus, that single episode was handled in a way that addressed all of Harper's one-time actual needs, and it never recurred.

Finally, while the record shows that Harper's job performance issues as to managing the quality of the Center's facilities continued following her diagnosis, those same dorm maintenance issues first appeared in reports beginning in August 2016, a full year before her August 2017 breast cancer diagnosis. (Def.'s SMF ¶¶ 82–85.)  Because the trend of job performance problems did not begin with Harper's diagnosis or when she returned to work following her chemotherapy, those issues themselves are insufficient to have put Odle on notice that Ms. Harper was not "tolerating" work.

The undisputed facts therefore undercut any argument that Odle failed to accommodate Harper's illness. Harper admitted in deposition testimony that Odle management encouraged her to fill out the FMLA paperwork, helped her do so in a "kind and helpful" way, and granted any requested leave. (Def.'s SMF ¶ 102-104.) Harper testified that she knew that if she had needed more time away from work, she could have used the FMLA leave that had been granted to her. (Def.'s Harper Dep., at 39.) Harper apparently chose not to take that leave because, as she stated, she felt that she was able to "pull [her] own load." (Def.'s Harper Dep., at 38.) In the Court's judgment, to have gone beyond the accommodations the record reflects, as to an illness of which the employer was well-aware, would have imposed on Odle a duty of "clairvoyance" about Harper's need for extra accommodations in a way that the law does not command. The undisputed record shows that Harper was, properly, not constrained in seeking whatever support from the employer that she believed that she required or which would be helpful or supportive in doing her job, and that she had asked for and had been granted accommodations without issue. In that context, the record also shows that Odle was timely, responsive and seemingly complete in its provided accommodations. When that entire picture is considered, one of open and concrete requests met by direct and responsive accommodations, to conclude that the ADA and PHRA still

imposed an additional duty of accommodation on Odle would depart from the relevant decisional law.

Finally, even if Harper's visible signs of weakness had raised a duty on Odle's part to inquire about further appropriate accommodations, Harper fails to set forth the accommodations that she would have needed and that Odle could and should have offered her, beyond the time off that Odle had already offered. Harper had FMLA leave available to her and confirmed in her deposition testimony that she understood that she could use it if necessary. And her clear communications to Odle about her need for prior accommodations demonstrate that she knew how to ask for accommodations when needed. And although Harper argues that "Taleb could have temporarily taken over her duties," Odle would have had no reason to initiate such a measure unless Harper actually took the leave that she had been granted. (ECF No. 37, at 5.) Harper also does not point to any accommodation that she would have sought or been granted if only she had been asked, obviating the existence of the necessary underpinning of such a "duty to ask" failure to accommodate claim, *e.g* a reasonable accommodation that was needed and which would have been requested had Harper been asked.

There is therefore no genuine factual dispute about Odle's efforts to accommodate Harper's illness. And given the uncontested fact that Ms. Harper was expressly encouraged to take leave if necessary, and decided not to use that accommodation without ever requesting a different one, the Court cannot conclude that there is a triable issue that Odle management failed to engage in the interactive process to accommodate Harper's illness. Instead, the undisputed record shows that Odle fulfilled its accommodation duty by actively working with Harper each step of the way.

**III.**    **CONCLUSION**

The Court concludes that by failing to respond to the Defendant's Motion for Summary Judgment on her age and disability discrimination claims, the Plaintiff has failed to point to evidence from which a reasonable jury could conclude that Odle's decision to terminate her employment was impermissibly linked with her age or her cancer diagnosis. The Court also concludes that there is no genuine issue of material fact that the Defendant met its duty to engage in the interactive process to provide Harper with reasonable accommodations. The Defendant's Motion for Summary Judgment is therefore GRANTED in its entirety.

An appropriate Order will enter, and the case will be closed on the docket.


Dated: February 25, 2021                        s/Mark R. Hornak

                                                Mark R. Hornak
                                                Chief United States District Judge

cc:     All counsel of record